In the Matter of the Appeal of PITT A. SEAMAN, Administrator, from Assessment by COUNTY TREASURER, PITT A. SEAMAN, Administrator, Appellee. PLYMOUTH COUNTY, IOWA and R. H. KAIN, Treasurer, Appellants.

Taxation of omitted property: NOTICE TO TAXPAYER. The county treasurer may designate any place in the county where objection to a proposed listing and assessment of omitted property may be made, and a notice signed by both the treasurer and auditor notifying a taxpayer to appear at the office of the auditor for that purpose is sufficient to confer jurisdiction to make the assessment.

Assessment of property: SUFFICIENCY. In the assessment of property two things are essential, a listing in some form of the property to be taxed and an estimate of the sums which are to guide in the apportionment of the tax; an erroneous classification is immaterial unless shown to be prejudicial to the taxpayer. In the instant case the entries are held to constitute an assessment, although both the actual and taxable values are not designated.

Listing of property: FRAUD. PLEADINGS. A taxpayer who induces the assessment of his property at less than its real value commits a fraud, and cannot rely upon the same as an adjudication in bar of a subsequent assessment of the omitted property by the treasurer; and upon appeal from the action of the treasurer any matter entering into the assessment may be reviewed, though not specially pleaded.

Estate property: TAXATION OF CREDITS. Where by the terms of a will the administrator is to keep the estate intact for a certain period and in the meantime advances money to the heirs, taking their notes for the same, the notes represent indebtedness due the estate and are taxable as credits.

*Appeal from Plymouth District Court.*— HON. WM. HUTCHINSON, Judge.

WEDNESDAY, OCTOBER 16, 1907.

APPEAL from a decree of the district court canceling an assessment of omitted property made by the county treasurer.— *Reversed.*

*Ben McCoy* and *G. T. Struble,* for appellants.

*Martin & Martin,* for appellee.

LADD, J.— Appellee was the administrator with the will annexed of the estate of John McGillvery, deceased. By the terms of the will, he was required to manage and control the entire estate until the youngest child should attain his majority, when a division among the children should be made. The moneys and credits of the estate were assessed in 1901 at $2,800, and for each of the years 1902 to 1905, in-

clusive, at $4,000. On the 22d of January, 1906, a notice was served on him, signed by both the treasurer and auditor of Plymouth county, stating the amount of moneys and credits claimed to have been omitted in each of the years mentioned, and notifying him " to appear before the county auditor at his office in the court-house " February 2, 1906, at 10 o'clock a. m. and show cause why the same should not be assessed and placed on the tax books. This was followed by a demand on the part of the treasurer that he pay the amount said property would have been taxed had it not been omitted, with 6 per cent. interest on the several sums, from the times they would have been payable. His attention was then directed to section 1374 of the Code, and chapters 47 and 50, Acts 28th General Assembly and he was again admonished that he might appear " at the office of the said auditor " at the time mentioned and " make objections to said proposed listing and assessments," or this would be done as provided by law. The administrator, through his attorneys, filed objections addressed to both treasurer and auditor, challenging the jurisdiction of either, setting up the fact of former assessment as an adjudication, and claiming there was no excess over the moneys and credits returned each year. On February 5, 1906, the treasurer made an assessment against the administrator in Struble township of Plymouth county as follows:

| Year. | Value of Personalty. | Consolidated Tax. | Interest | Total Tax. |
|---|---|---|---|---|
| 1901 | $1,206 | $42.21 | $ 9.71 | $51.91 |
| 1902 | 1,116 | 61.38 | 10.43 | 71.81 |
| 1903 | 1,202 | 50.48 | 5.55 | 56.03 |
| 1904 | 1,535 | 61.40 | 3.07 | 64.47 |
| 1905 | 1,472 | 58.88 | | 58.88 |

Several grounds are urged by the appellee in support of the ruling of the district court by which this assessment was set aside and cancelled.

I. It is first contended that the notice was not such as to confer jurisdiction on the county treasurer to make the

assessment. Section 1407a, Code Supplement 1902, pro-

**1. TAXATION OF OMITTED PROPERTY: notice to taxpayer.** vides that, before listing the property discovered, the treasurer " shall give the person in whose name it is proposed to assess the same, or his agent, ten days' notice thereof by registered letter addressed to him at his usual place of residence, fixing the time and the place where objection to such proposed listing and assessment may be made." It will be observed that the treasurer is to designate the place. This may be at his office or anywhere else within the county. In this respect the statute differs from that relating to a hearing by the auditor who " before assessing or listing for taxation any omitted property " must notify the alleged delinquent to appear " before him at his office." Code Supplement 1902, section 1385b. As the notice specifically designated the place where objection might be made, it was in strict compliance with law. That it was also sufficient under the section last cited did not impair its effectiveness for the purpose intended.

II. Appellee next urges that the entries made did not constitute an assessment, nor serve as a basis for the collection of taxes claimed. Counsel have not taken the trouble

**2. ASSESSMENT OF PROPERTY: sufficiency.** to point out the alleged defects, but we may assume that these are in classifying the omitted moneys and credits as personal property generally, and in not designating both the actual and taxable values. If rightly assessed, it is immaterial if erroneously classified or designated generally as personal property if not prejudicial to the owner. *Robbins v. Magoun,* 101 Iowa, 580. But were the moneys and credits assessed at all? Section 1305 of the Code Supplement of 1902 provides: " All property subject to taxation shall be valued at its actual value, which shall be entered opposite each item, and shall be assessed at twenty-five per cent. of such actual value. Such assessed value shall be taken and considered as the taxable value of such property, upon which the levy shall

be made. Actual value of property as used in this chapter shall mean its value in the market in the ordinary course of trade." In that of the treasurer only the "value of personalty" is stated, but it is manifest from the computations that the assessable value was intended and the actual value was ascertainable by computation. The only object in entering the actual value is to facilitate computation, and assure the accuracy of the taxable value at which all property is listed, and on which taxes are levied. The duty of the assessing officer is to enter the full value on the assessment rolls (*Halsey v. Belle Plaine,* 128 Iowa, 467), but his omission to do so is not fatal to the assessment of a treasurer where enough appears so that this can be ascertained by computation. Two things are essential to a valid assessment; i. e., a listing of the property to be taxed in some form and an estimation of the sums which are to guide in the apportionment of the tax. *Judy v. National State Bank,* 133 Iowa, 252.

The present assessment meets these requirements, and the fact that it did not specifically conform to the exactions of one made by an assessor will not invalidate it. In *Galusha v. Wendt,* 114 Iowa, 597, the determination by the treasurer that property had been omitted and his ascertainment of the taxes due on account thereof was regarded as a valid substitute for the assessment exacted under the general statute on that subject, and in *Re Morgan's Estate,* 125 Iowa, 247, it was said: "Among other things the act [chapter 50, Acts 28th General Assembly] requires that, before listing any property discovered, a notice shall be given fixing a time and place at which objections to the proposed assessment may be made. The Code section and the later legislative act are to be considered together, and therefrom no more can be said than that the treasurer, when satisfied that the property has been omitted, shall make the fact to appear properly of record in his office as a basis upon which further proceedings may be had." In

so doing no more need be entered than is essential to constitute an assessment; and that was done in this case.   In the notice served on the administrator the actual value of omitted moneys and credits as claimed were stated, and the items under the heading, " Value of Personalty," are exactly 25 per cent. of such values, so that the administrator could not have been mislead, and was in no way prejudiced.   We are of the opinion that the entries amounted to an assessment.

III.   But it is said that the assessment and equalization made by the assessor and the board of equalization is an adjudication not to be obviated by proof of the excess shown in this case.   This proposition is sufficiently answered in *Galusha v. Wendt,* 114 Iowa, 597; *Lambe v. McCormick,* 116 Iowa, 175; *Beresheim v. Arnd,* 117 Iowa, 83; *Judy v. Bank, supra.* The proof brings the case fairly within the rule of these decisions, for the administrator orally returned the property at the value at which it was listed by the assessor, without itemizing the same, and thereby induced the assessor to fix its value at less than half of what he should have done. This was such a fraud as vitiated the assessment and deprived it of any binding force.   True, such an issue was not raised by any pleading filed, nor was this necessary. The statute does not prescribe the method of raising issues on appeal from the treasurer's assessment, and, in the absence thereof, the same rule should obtain as in appeals from the board of review.   *The Farmers' Loan & Trust Company v. Newton,* 97 Iowa, 592; *City of Marion v. Insurance Co.,* 122 Iowa, 629.   No pleadings were essential and none were filed by the treasurer.   Whatever entered into the making of the assessment was proper subject of inquiry.

3. LISTING OF PROPERTY: fraud: pleadings.

IV.   The evidence disclosed that the administrator had let several of the children of deceased have money and taken their notes therefor.   Appellee argues that these were not assessed as credits because they evidenced the portion of the estate which in advance of final distribution had been deliv-

ered to the beneficial owners, and the notes amounted to no more than receipts to the administrator for the portion of their own property each had received.   In other words, it is contended that the notes were given not for money borrowed, but merely to show a payment or advancement by the administrator. By the terms of the will, the estate was to be kept intact and managed by the administrator until the youngest child became of age.   Until then the children were entitled to nothing, save as expended to properly support and educate them.   Even the income above such expenditure was to be added to the estate and only divided at the time indicated; so that the administrator was utterly without authority to advance anything to the heirs.   He seems to have proceeded on this theory, for not only did he require notes for money loaned them, but exacted the payment of interest thereon. Had payment been intended, a receipt merely would have sufficed.   Moreover, no specific amount of money was left for any particular child, and no one could know in advance whether upon the division of the estate any of those receiving money would be entitled thereto.   This appeared at final settlement when the values of the several tracts of land were estimated, and payments made or received or the notes applied in equalizing the several shares.   In other words, they were treated in the settlement as evidencing debts to the estate, and might have been, if they were not, offset as such against the moneys and credits of the several children executing them in making return of property to the assessor. At any rate, the executor, under a well-recognized rule of law, retained title to all the personal property of the estate until the youngest child became of age, and in letting the heirs have money he must be presumed to have done so in compliance with his plain duty under the provisions of the will.   He was without authority to make advancements, and therefore, as everything was done essential to constitute loans, he must be held to have intended to make them.   He

*4. ESTATE PROPERTY: taxation of credits.*

took notes and exacted the prompt payment of interest. The title thereto was in him, and he should have returned them to the assessor as credits.

V. Even if the notes of the heirs were to be deducted, there should have been an assessment each year for omitted property. In 1901 this amounted to $3,523.27, and for sums somewhat less each of the years following. For that year the value of all the omitted property exceeded the treasurer's assessment so that the latter will stand. The assessment of 1902, as is conceded by appellant, should be reduced to $4,016.35, that for 1903 to $4,478.56, that for 1904 to $5,584.17, and that for 1905 to $4,185.04. These are actual values, and the assessable values can be readily computed, as well as the taxes and interest.— *Reversed.*